**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FUNCTIONAL GOVERNMENT INITIATIVE,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL TRADE COMMISSION,<br><br>Defendant. | Civil Action No. 22-3273 (CKK) |

**MEMORANDUM OPINION**
(September 22, 2026)

Plaintiff Functional Government Initiative ("Plaintiff") moves the Court to award attorney's fees and costs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E), against Defendant Federal Trade Commission ("Defendant"). Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court shall **DENY** Plaintiff's motion.

## I. BACKGROUND

On August 7, 2022, Plaintiff submitted a FOIA request to Defendant seeking six categories of records regarding a baby formula shortage. Pl.'s Mot. at 1; Def.'s Opp'n at 2. Defendant's FOIA office designated Plaintiff's request as "FOIA-2022-01401" and treated it as complex because it sought records from multiple offices separate from Defendant's FOIA office. Def.'s Opp'n at 2 (citing Kappler Decl. ¶¶ 9–10, 13; Dkt. No. 35-1 at 1). On August 12, 2022, Defendant's FOIA office sent a request for potentially responsive documents to the five FTC

[1] The Court's consideration has focused on Plaintiff's Motion for Attorney Fees and Costs, Dkt. No. 34 ("Pl.'s Mot."); the Declaration of Christopher Stanley, Dkt. No. 34-3 ("Stanley Decl."); the Declaration of Richard W. Goeken, Dkt. No. 34-5 ("Goeken Decl."); Defendant's Opposition, Dkt. No. 35 ("Def.'s Opp'n"); the Declaration of Burke W. Kappler, Dkt. No. 35-4 ("Kappler Decl."); and Plaintiff's Reply, Dkt. No. 39 ("Pl.'s Reply").

Commissioners' Offices and to the Office of Public Affairs ("Public Affairs").[2] *Id.* Defendant's FOIA office received documents from Commissioner Slaughter's office on August 29 and Commissioner Bedoya's office on September 6. *Id.* (citing Kappler Decl. ¶ 11).

On September 6, 2022, Plaintiff inquired about the status of its FOIA request. Pl.'s Mot. at 2 (citing Stanley Decl. ¶ 3). The next day, Defendant responded with a letter stating that it would be unable to respond to Plaintiff's request within the statutory 20-business day deadline because of "unusual circumstances," namely, the "need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request." Def.'s Extension Letter, Dkt. No. 35-2 at 2–3. Defendant's letter informed Plaintiff that it was "continuing to process [the] request," that Plaintiff could "seek dispute resolution services" from Defendant's Public Liaison, and that Plaintiff had the option to "narrow [its] request to reduce the necessary response time." *Id.* at 3. One of Plaintiff's representatives responded to Defendant that same day, saying, "Please let me know if you need anything more from me as you process this request." Stanley Decl. ¶ 8.

On September 7, 2022, Defendant's FOIA office followed up with the offices that had not yet responded to determine the status of their searches. Def.'s Opp'n at 3 (citing Kappler Dec. ¶ 15). On September 9, Defendant's FOIA office learned that another employee in Public Affairs potentially had responsive records, so it sent another request for documents to Public Affairs. Kappler Dec. ¶ 15. These offices continued to send in batches of potentially responsive material. *See id.* ¶ 16. From October 2, 2022, to November 2, 2022, Defendant loaded 2,182 pages of records received from the Commissioners' offices and Public Affairs into FOIAXpress to be

[2] Defendant explains that these offices were chosen because Plaintiff's FOIA request expressly sought records from Commissioners or their staffs about the infant formula shortage, as well as records pertaining to news media inquiries—which Public Affairs handles—"about meat and poultry." *Id.* (quoting Dkt. No. 35-1 at 1-2 (categories 2-6) and citing Kappler Decl. ¶ 10).

reviewed for responsiveness and FOIA exemptions. *Id.* ¶ 17. Once uploaded, these documents were ready for review for responsiveness and any applicable FOIA exemptions. *Id.*

Plaintiff filed this lawsuit on October 26, 2022, alleging that Defendant failed to make a timely determination regarding its request and had wrongfully withheld records. *See* Dkt. No. 1.

After Plaintiff filed suit, Defendant "continued to search for and process records in the normal course." Kappler Decl. ¶ 19. Between November 18, 2022, and November 22, 2022, Defendant's FOIA office identified and sent requests for documents to additional agency offices that it had identified as potential custodians following discussions with the original set of offices contacted and after conducting additional research. *Id.* Defendant's FOIA office began receiving responses from these potential custodians on November 23 and completed collecting records from these custodians on January 9, 2023. *Id.* ¶ 20. "In total, 4,313 potentially responsive records were collected and were loaded into Relativity on January 10, 2023; this total included both the documents collected during the initial search of the Commissioners' offices and Public Affairs plus the documents collected from the second search performed in November 2022." *Id.* Defendant's FOIA office completed an initial review for responsiveness by February 14, 2023, and began reviewing the potentially responsive records for privilege and FOIA exemptions. *Id.*

Defendant's responsiveness review resulted in Defendant identifying 1,035 potentially responsive records (comprising 11,035 pages). *Id.* ¶ 21. At the time, Defendant's FOIA office considered its search complete. *Id.*; *see also* Joint Status Report, Dkt. No. 19. However, upon review of the records, Defendant's FOIA office "learned that still other FTC offices might possess responsive materials." Kappler Decl. ¶ 22. So Defendant sent requests to these additional offices. *Id.* By May 12, 2023, Defendant had collected 8,387 more potentially responsive records, and by

June 29, 2023, Defendant had completed an initial responsiveness review that identified 4,429 of the 8,387 records as potentially responsive. *Id.*

In total, Defendant collected 12,700 records from August 2022 through May 2023 from 18 agency offices resulting from its August 2022 through March 2023 requests for documents. Kappler Decl. ¶ 23. Defendant identified 5,464 of these 12,700 records as initially responsive. *Id.* However, that number decreased following discussions with Plaintiff regarding the time required to review the records and their priorities for production. *Id.*

Plaintiff and Defendant conferred and agreed on a production schedule, which they filed with the Court on March 24, 2023. *See* Joint Status Report, Dkt. No. 20. Defendant then began making monthly productions, which the parties later agreed could be changed to bimonthly productions. Kappler Decl. ¶ 26 (citing Joint Status Report, Dkt. No. 26). Defendant and Plaintiff continued to confer during this process. *See id.* ¶¶ 27–31.

Defendant made its final production to Plaintiff on June 20, 2024. *Id.* ¶ 32; Joint Status Report, Dkt. No. 31 at 1. Plaintiff completed its review of Defendant's production and, on December 16, 2024, informed the Court that it "[did] not wish to pursue issues with the productions, including any challenges to the withholdings of certain records by [Defendant] based on FOIA exemptions," and that "[t]he only remaining issue to be resolved is the issue of Plaintiff's request for attorney's fees and costs." Joint Status Report, Dkt. No. 33 at 1. The parties proceeded to brief Plaintiff's request for attorney's fees and costs, and the matter is now ripe for decision.

## II. LEGAL STANDARD

Courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred" in FOIA cases in which "the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A complainant has "substantially prevailed" if they have obtained relief through either (1) "a judicial order, or an enforceable written agreement or consent decree,"

or (2) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* § 552(a)(4)(E)(ii). This case concerns Plaintiff's eligibility under the second prong of this test, which codifies what is known as the "catalyst theory." *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 95 (D.C. Cir. 2020) (quoting *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524-25 (D.C. Cir. 2011)).

## III. ANALYSIS

The question under the catalyst theory is whether Plaintiff has shown that the "institution and prosecution of [this] litigation caused [Defendant] to release the documents [that Plaintiff ultimately] obtained." *Grand Canyon*, 947 F.3d at 97 (citation modified). Plaintiff cannot rely solely on the fact that it received "the bulk of the documents responsive to its request only after it filed suit," as "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Id.* (citation omitted). Instead, Plaintiff "has the burden of showing that it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Id.* (citation omitted).

To meet this burden, Plaintiff must "overcome the presumptive 'inference' that [Defendant] responded in good faith to [Plaintiff's] FOIA requests." *Inst. for Energy Rsch. v. Dep't of Treasury*, No. 22-cv-03653 (DLF), 2024 WL 5118225, at *5 (D.D.C. Dec. 16, 2024) (citing *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Just.*, 750 F.2d 117, 120 (D.C. Cir. 1984)). As applied to Defendant, this presumption of good faith is bolstered by evidence in the record showing that Defendant initiated its search for responsive records shortly after receiving Plaintiff's request—before Plaintiff initiated litigation—and never suggested to Plaintiff that it would fail to comply with the request.[3] *See id.* ("Because the record demonstrates that [the agency]

---

[3] *See* Def.'s Opp'n at 8–9 (citing Kappler Decl., Dkt. No. 35-4 ¶¶ 10–14; Extension Letter, Dkt. No. 35-2).

initiated its search and review process before any action was filed, [the plaintiff] cannot prove that its litigation catalyzed the agency's response."); *Grand Canyon*, 947 F.3d at 97 (finding that plaintiff did not satisfy catalyst theory where the agencies "had begun processing the plaintiff's request well before [the] lawsuit was initiated" and never "suggested [they] would fail to comply with the request"); *Env't Integrity Project v. United States Env't Prot. Agency*, 316 F. Supp. 3d 320, 328 (D.D.C. 2018) (JDB) (finding that agency made good faith effort where evidence showed a "diligent ongoing process that began before the initiation of the lawsuit"); *Gov't Accountability & Oversight v. Sec. & Exch. Comm'n*, No. 23-cv-3268 (RC), 2024 WL 4828107, at *4 (D.D.C. Nov. 19, 2024) (finding that plaintiff could not meet burden under catalyst theory where the agency "had already begun processing the FOIA request" before plaintiff initiated suit).

Plaintiff makes three arguments in an effort to show that its suit catalyzed Defendant's production of the requested records. The Court shall address these arguments in turn. Upon doing so, the Court concludes that Plaintiff has not met its burden of showing that its lawsuit was the catalyst for Defendant's ultimate production. Accordingly, the Court shall **DENY** Plaintiff's [34] Motion for Attorney Fees and Costs.

1. Plaintiff has not shown that Defendant's actions at the administrative level demonstrate that Defendant likely would not have provided the records requested by Plaintiff in the absence of this suit.

Plaintiff's first argument is that "Defendant's actions at the administrative level" show that Defendant "likely would not have provided the records requested by Plaintiff in the absence of this suit." Pl.'s Mot. at 6–7. To support this argument, Plaintiff relies on claims that Defendant (i) "missed the statutory 20-working day deadline under FOIA for making a determination on Plaintiff's request," (ii) did not "invoke the existence of unusual circumstances within that 20-day period to obtain an additional 10-day extension," (iii) "did not provide a date by which documents would be provided" when it "belatedly attempted to invoke unusual circumstances," and (iv)

"broke off further communications" with Plaintiff "[a]fter providing its letter to Plaintiff on September 7, 2022." *Id.*

Defendant argues that "courts do not construe FOIA's twenty-day determination deadline to be a strict liability rule and often deny plaintiff's claims for fees even where agencies respond to FOIA requests far beyond that statutory deadline." Def.'s Opp'n at 11 (collecting cases). Defendant also asserts that "the FOIA office's September 2022 extension letter—provided nearly two months before [Plaintiff's] lawsuit—rebuts [Plaintiff's] catalyst argument, as it expressly informed [Plaintiff] that the office was 'continuing to process your request at this time.'" *Id.* (quoting Extension Letter, Dkt. No. 35-2 at 2).

The Court concludes that Defendant's actions at the administrative level do not indicate that this litigation catalyzed its response to Plaintiff's FOIA request. Plaintiff's argument regarding FOIA's 20-day deadline is unavailing because "some amount of delay in excess of the statutory limit is, regrettably, a common feature of the FOIA process." *Am. Wild Horse Campaign v. United States Bureau of Land Mgmt.*, No. 22-cv-3061 (CRC), 2024 WL 3967256, at *3 (D.D.C. Aug. 26, 2024). As the D.C. Circuit has observed, the realities of processing FOIA requests "would make a strict-liability rule for agencies that miss the 20-day FOIA deadline both unnecessarily harsh and potentially quite expensive." *Harvey v. Lynch*, 178 F. Supp. 3d 5, 8 (D.D.C. 2016), *aff'd sub nom. Harvey v. Sessions*, No. 16-5200, 2017 WL 4220323 (D.C. Cir. July 14, 2017). Defendant has shown that it began processing Plaintiff's request upon receipt. Kappler Decl. ¶¶ 9–10. And it continued doing so leading up to Plaintiff's lawsuit and after Plaintiff initiated its lawsuit. *Id.* ¶¶ 19–31. Defendant also informed Plaintiff that Plaintiff's request presented "unusual circumstances" because it required Defendant to "search for and collect the requested records from field facilities or other establishments that [were] separate from

[Defendant's office]." Extension Letter, Dkt. No. 35-2 at 3. In doing so, Defendant expressly informed Plaintiff that it was "continuing to process [its] request" and that Plaintiff could "narrow [its] request to reduce the necessary response time" or "seek dispute resolution services from [Defendant's] FOIA Public Liaison." *Id.* Plaintiff cannot overcome this evidence by merely pointing to a missed statutory deadline.

Accordingly, the Court concludes that Defendant's actions at the administrative level do not indicate that Plaintiff's litigation catalyzed Defendant's response because the record shows that Defendant promptly started processing Plaintiff's request upon receipt and continued to do so until making its final production.

2. Plaintiff has not shown that Defendant would have produced fewer than all the records it ultimately provided to Plaintiff had Plaintiff not initiated this litigation.

Second, Plaintiff argues that "even if . . . Defendant would have completed some search and produced some records in the absence of this litigation, . . . it is clear that Plaintiff would not have received *all* of the records to which it was entitled under FOIA absent this suit." Pl.'s Mot. at 7 (emphasis in original). To support this argument, Plaintiff cites the growing number of potentially responsive records identified by Defendant throughout its search. Specifically, Plaintiff emphasizes that Defendant first stated in February 2023 "that a very preliminary search had returned approximately 2,500 potentially responsive pages," *id.* citing (Goeken Decl., Dkt. No. 34-5 ¶ 5); that on February 24, 2023, "Defendant stated on the record that it had completed its search and located some 11,000 pages of potentially responsive records," *id.* (citing Joint Status Report, Dkt. No. 19 at 1); and that in October 2023, "after months of discussions with Plaintiff, during which time Plaintiff repeatedly asked about the search terms being used and the number of records remaining to be processed," Defendant stated that it had located 55,000 pages of potentially responsive records, *id.* at 8 (arguing that "[t]he fivefold increase in the number of

potentially responsive records located is directly attributable to Plaintiff's commencing this suit and the scrutiny of Defendant's processing of records that this litigation provided").

Defendant argues that Plaintiff "provides no evidence of a causal connection between the lawsuit and the increase in identified potentially responsive records (or the number of records released)." Def.'s Opp'n at 11–12. To support this argument, Defendant submits an affidavit indicating that "the increase [in potentially responsive records] was due to the FOIA Unit learning from the documents initially collected that additional agency offices likely possessed responsive records." *Id.* at 12 (citing Kappler Decl., Dkt. No. 35-4 ¶¶ 19, 22). According to Defendant, "[t]he expanded search reflected the FOIA Unit's diligent and comprehensive efforts to locate potentially responsive documents throughout the Commission, as is done as part of the FTC's ordinary FOIA search and processing work regardless of whether a lawsuit is filed." *Id.*

Plaintiff's evidence is insufficient to rebut Defendant's asserted legitimate explanation for the increase in potentially responsive records. First, it appears that Plaintiff's characterization of the evidence in its Motion is not entirely accurate. In its Motion, Plaintiff asserts that in February 2023, Defendant "first stated that a very preliminary search had returned approximately 2,500 potentially responsive pages," and "[t]hereafter . . . stated on the record that it had completed its search and located some 11,000 pages of potentially responsive records." Pl.'s Mot. at 7 (citing Goeken Decl. ¶ 5; Dkt. No. 19 at 1). But the evidence proffered by Plaintiff shows that Defendant first told Plaintiff that its "very early estimate" was that 11,000 pages were potentially responsive; Defendant later told Plaintiff that there were approximately 2,500 pages remaining to be produced but subsequently clarified that this had been in error. *See* Goeken Decl. ¶¶ 5–7 (citing App., Dkt. No. 34-6 at 1–4).

More importantly, Plaintiff's argument fails to "assert something more than Post hoc, ergo propter hoc." *Cox*, 601 F.2d 6. "Aside from the sequence of events, there is no reason to think that [Defendant] would have failed to release [all of the records to which Plaintiff was entitled] had [Plaintiff] not filed its lawsuit." *WP Co. LLC v. U.S. Dep't of State*, 506 F. Supp. 3d 11, 16 (D.D.C. 2020) (JEB). Plaintiff does not identify with any specificity the records it claims it would not have received had it not been for its lawsuit. Nor does Plaintiff offer any argument—let alone evidence—to undermine Defendant's legitimate explanation, which is that the universe of potentially responsive records continued to grow as Defendant conducted its search. *See* Def.'s Opp'n at 11–12. Defendant asserts, without objection, that such an occurrence is part of its "ordinary FOIA search and processing work regardless of whether a lawsuit is filed." *Id.* at 12. In other words, Plaintiff has failed to rebut Defendant's evidence showing that the increase in potentially responsive records "was in reality pursuant to [Plaintiff's] administrative request," not Plaintiff's litigation. *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1497 (D.C. Cir. 1984).

Accordingly, the Court concludes that Plaintiff has not shown that Defendant would have produced fewer than all the records it ultimately provided to Plaintiff had Plaintiff not initiated this litigation, and therefore this argument does not support Plaintiff's request for fees and costs.

3. Plaintiff has not shown that its lawsuit is the reason Defendant used technological resources during production.

Finally, Plaintiff argues that "once this suit caused Defendant to complete its search and locate the full universe of potentially responsive records, only then did Defendant voluntarily employ additional technological resources to process these potentially responsive records." Pl.'s Mot. at 8. Plaintiff's argument stems from a representation that Defendant made in the parties' February 16, 2024, Joint Status Report. *See* Dkt. No. 26. In this Report, Defendant represented that it would "begin using a new email threading tool that will permit the identification and

production of only 'inclusive emails,' such as the last email in a chain, thereby eliminating the need to provide individual emails making up the chain that contain duplicative content," and that "[d]oing so should expedite [its] document review and production process while not changing the substance of the material produced to [Plaintiff]." *Id.* at 2. Plaintiff asserts that "this is the result sought by the lawsuit and without which there can be little doubt it would not have been achieved." Pl.'s Mot. at 8.

Defendant counters that it "did not obtain the email threading tool due to [Plaintiff's] lawsuit; rather, the FOIA office only learned in February 2024 that this document organization resource was available and could be used in certain FOIA matters involving large volumes of documents." Def.'s Opp'n at 12 (citing Kappler Decl. ¶¶ 7, 31). Defendant argues that Plaintiff's "suggestion that, absent this lawsuit, [it] would not have availed itself of technological resources to speed up processing its FOIA request is pure speculation and entirely unfounded." *Id.*

The Court concludes that Defendant's use of technological resources to process Plaintiff's request does not suggest, without more, that Plaintiff's lawsuit was the catalyst for Defendant's production. Again, Plaintiff's argument fails because Plaintiff relies on nothing more than the fact that Defendant employed certain technological resources at some point after Plaintiff filed its lawsuit. *See Cox*, 601 F.2d 6 (". . . an allegedly prevailing complainant must assert something more than Post hoc, ergo propter hoc."). Plaintiff does not provide any evidence to suggest that Defendant would have refused to use the relevant technological resources absent Plaintiff's lawsuit. Indeed, even if Defendant had access to the relevant technological resources before Plaintiff filed its lawsuit, there would have been no opportunity for Defendant to use these resources prior to Plaintiff's lawsuit because, based on the information provided in the parties'

February 16, 2024, Joint Status Report, these resources were only applicable to the "document review and production process," not the initial identification process. *See* Dkt. No. 26 at 2.

Accordingly, the Court concludes that Defendant's use of technological resources to process Plaintiff's request does not show that Plaintiff's lawsuit catalyzed Defendant's production because Plaintiff has provided no evidence for the Court to infer that Defendant would have withheld these technological resources without Plaintiff's lawsuit.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff is not eligible for fees and costs under the catalyst theory. Accordingly, it is hereby **ORDERED** that Plaintiff's [34] Motion for Attorney Fees and Costs is **DENIED**. A separate Order shall accompany this Memorandum Opinion.

**SO ORDERED.**

**Dated:** September 22, 2026

Colleen Kollar-Kotelly
COLLEEN KOLLAR-KOTELLY
United States District Judge